## INGERSOLL–RAND CO. v. WORTHINGTON PUMP & MACHINERY CORPORATION.

### No. 79.

*Circuit Court of Appeals, Second Circuit.*

*Jan. 4, 1937.*

Chester A. Adee, of New York City (Charles Kingsley and George F. Scull, both of New York City, of counsel), for plaintiff-appellant.

Philipp, Sawyer, Rice & Kennedy, of New York City (Cleon J. Sawyer, James J. Kennedy, and James J. Kennedy, Jr., all of New York City, of counsel), for defendant-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff's bill charged infringement of claims 1 and 2 of patent No. 1,550,332 issued to Paul A. Bancel August 18, 1925, for a surface condenser. Such condensers serve to cool the steam which flows from the exhaust of a steam engine to return the part which is condensable to water for use again in the boiler. The patent is concerned with the type of condenser which operates at pressures less than atmospheric and especially with the so-called single pass form of such types.

In such condensers the steam to be cooled to water is directed against a bank of tubes over and around which it spreads. The tubes carry cold water which absorbs the heat withdrawn from the steam and carries it outside the condenser. As the cold water enters a single pass condenser at one end and goes out the other, the cooling tubes at the end the water enters have a temperature lower than they do at the end of exit; the difference being due to the absorbed heat. For this reason the condenser is more efficient at the entrance end. Consequently, if the same amount of steam at the same pressure is permitted to spread out over the cooling tubes without regard to the decreased cooling capacity of those tubes in the direction of water flow, the portion of the steam which is condensable will be condensed in that part where the bank of tubes is cooler before it penetrates as far into the bank as will like steam in the warmer part. This results in what may for our purposes be called unequal penetration. This unequal penetration of the tube bank by the steam leaves in the cool-er part of the condenser tubes which are unused for purposes of steam condensation at the same time all the tubes at the warmer end are so used and, if there is less than complete penetration at the warmer end, there will be still less at the colder end. It is said that such a condition is undesirable, and we accept that as a fact, though it must be understood also that in a vacuum condenser it is not only necessary to return to water that part of the entering steam which can be condensed but to cool and withdraw constantly from the condenser a sufficient amount of air and noncondensable vapor to maintain the desired approach to a vacuum. So cooling tubes which do not serve to condense steam may not in fact be useless, for they may cool the air and vapor to reduce its volume to one within the capacity of the pump or pumps with which the condenser is equipped to remove that. In any commercial condenser working under usual conditions, the steam to be condensed is really but a mixture of steam with air, and there is always some leakage of air into the condenser from the outside since it is impractical, at least, to construct and maintain it absolutely air tight. So at some place in the condenser the air bearing steam has been condensed to the point where it becomes steam saturated air and the further action of the condenser upon it is more properly called devaporization, for it is then in reality air cooling. Though this latter necessary function may well be performed by the tubes not reached by the steam in a condenser where steam penetration of the tubes is unequal, we may now disregard that.

The patentee did not aim at complete steam penetration of the tube bank necessarily. That would require some auxiliary cooling means for reducing the volume of noncondensable air and vapor so as not to overload the air pump and he merely wanted to get equal penetration throughout the tube bank.

The patent in suit is solely for a condenser. It does not include any means by pump or otherwise for maintaining subatmospheric pressure in any portion. There are disclosed in the patent seven different ways by which the desired result may be accomplished. These ways employ varying methods and are either the partial blocking of the passage of the steam through the spaces between the tubes in the warmer portion and the di-

version of some of it to the colder part by using baffle plates or bunching the tubes to reduce the intervening space at the warm end; or the introduction of the steam at a point much nearer the colder than the warmer end; or the creating of a greater pressure drop through the space at the cold end which is accomplished by installing more suction at the cold than at the warm end. In all but one of the forms used when the steam was brought in much nearer the cold than the warm end of the tube bank, the patentee divided the condenser into two compartments, one containing the colder portion and the other the warmer, and in one form in which baffle plates were used these two compartments were subdivided to separate the warmer from the colder part of each.

Further discussion will be simplified and yet adequately cover the issues if it is concentrated on the type disclosed by the patentee for accomplishing even penetration by the use of a greater pressure drop, or more suction, at the colder end.

The claims relied on are very broad and seek to set up the patent monopoly in general terms so largely descriptive of results merely that in the court below they were held invalid because they were "functional" as well as because they were held to be anticipated.. As we think the last-mentioned ground of invalidity was shown, we prefer not to indulge in any needless and perhaps useless discussion of the technical issues involved in the first. The claims read:

"1. A condenser having tubes with different temperatures along their length resulting in unequal capacities for condensing steam in vertical sections along their length, and means for obtaining substantially equal depth of penetration of steam in said sections along the length of the condenser.

"2. A condenser having tubes with different temperatures along their length resulting in unequal· capacities for condensing steam in vertical sections along their length, and means for increasing the depth of penetration in the vertical sections in which the cooler water has more heat absorbing capacity."

It is enough that both claims cover all the forms of condenser disclosed and that of those at least the type which uses pressure drop regulation was no patentable advance over the prior art.

But a few words need be used to describe it. A simple form is the one where the condenser is divided into two compartments, each having a separate air pump. By adjusting the capacities of these pumps as desired, the suction on each compartment is not only different but varies to whatever extent is wanted. Steam flow being faster toward the point of least resistance, other conditions being the same, it is evident that more steam will flow into the spaces between the tubes in the colder compartment when more suction is provided there or, expressed in terms of penetration, the additional suction in the colder compartment will offset the effect of warmer tubes in the other and so theoretically, and of course actually, equal penetration will result if the adjustment of pressure variation to heat variation is once made to get it and, if either that remains a constant or further adjustment is made when necessary, equal penetration will continue. Moreover, by regulation of the suction the penetration of the tube bank· by steam can be made complete or arrested before that to leave some tubes for air and vapor cooling, if desired. Suction regulation may also be obtained, so it is argued, by using but one pump connected to both compartments by manifolds having equal orifices each small enough to employ the well-known principle that increase in velocity increases the resistance to flow which varies as the square of the velocity, but the patentee said nothing about that, and it is but another way to make use of the effect of unequal pressure drop to offset the effect of unequal cooling capacity to obtain equal penetration.

We think it is clear that the two claims in suit are anticipated by British patent No. 365 issued to James Weir on his application filed in 1893. He was, to be sure, attentive only to keeping the condensate as hot as possible whether the amount of steam to be condensed was relatively great or small as it varied with the working of the engine. So he divided his condenser into compartments and put a valve in the suction line leading from each compartment. That the suction outlet happened to be placed at the top of the compartments is immaterial, for the law of steam flow toward the point of lowest pressure applies wherever those outlets are located. He taught that the capacity of the condenser could be decreased by closing the

valve of any one or more compartments or by partially closing valves. If any valve was entirely closed, it is obvious that that compartment would become air bound and partial closing would be effective to reduce the condensing capacity accordingly. Weir's purpose was the opposite of that of the patentee, in that he provided a way to make his condenser less efficient at times to keep his condensate hot by avoiding undercooling of comparatively small quantities of steam when the engine was running under light loads while the patentee aimed at maximum obtainable cooling at all times. Yet the fact stands out that, if Weir's valves were regulated to permit the suction which would allow the steam in each compartment to penetrate the entire tube bank, maximum cooling would follow and, if they were regulated to vary the amount of suction so that there would·be enough more in the compartments which contained the colder tubes, equal penetration throughout the entire tube bank could be obtained in the same way the patentee did it. What the patentee really did was to disclose and claim a new use for the Weir construction without adaptation of it or putting it into a new combination. It may require the spark of genius to discover a new use for an old machine, but the law does not make that patentable when, as here, it does not amount to a new process, since it is not any "new and useful art, machine, manufacture, or composition of matter," or any improvement of them. See 35 U.S.C.A. § 31. Hookless Fastener Co. v.,G. E. Prentice Co., 68 F.(2d) 940, 941 (C.C.A.2). It is quite irrelevant that Weir intended to have his valves regulated to get unequal penetration when without any change in construction equal penetration could be obtained simply by valve regulation also. Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267; Dwight & Lloyd Sintering Co. v. Greenawalt, 27 F.(2d) 823, 828 (C.C.A.2); William B. Mershon & Co. v. Bay City Box & Lumber Co. (C.C.) 189 F. 741; In re Christensen (Cust. & Pat. App.), 82 F.(2d) 715. The principle underlying the decision in The Telephone Cases, 126 U.S. 1, 531, 8 S.Ct. 778, 31 L.Ed. 863, and cases which follow that does not apply, since here no change was required which destroyed the intended use of the Weir valves but only different regulation of suction by means of valves installed for the purpose of regulating suction in whatever way the operator might desire. Very likely the decision in The Telephone Cases, supra, is distinguishable also in that the claim covered more than an apparatus while here the claims do not.

It has been argued that the claims in suit, as to the form of condenser disclosed which utilizes the apportionment of steam by having the supply inlet either nearer the colder section of the tube bank, or by deflecting the incoming steam toward the colder part, are also anticipated by the French patent No. 484,412 issued to The British Westinghouse Electric & Manufacturing Company on the application of February 6, 1917, but this need not be discussed, for it is, at most, but an additional ground requiring affirmance of the decree.

.Decree affirmed.