MERIT MFG. CO. v. HERO MFG. CO.,
Inc., et al.

MERIT MFG. CO. v. SCHREINER et al.
Nos. 61, 62, Dockets 21766, 21767.

United States Court of Appeals
Second Circuit.

Argued Nov. 3, 1950.

Decided Nov. 22, 1950.

Klein, Alexander & Cooper, Fred A. Klein, New York City, for plaintiff-appellant.

Howson & Howson, W. F. Sonnekalb, Jr., New York City, John H. McKenna, Boston, Mass., of counsel, for Hero Mfg. Co., et al.

Edward S. Higgins, New York City, for Jack Schreiner.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

■■ These are appeals from two judgments, dismissing complaints for the infringement of Patent No. 2,371,756 issued to Jacob Gomberg on March 20, 1945. The judge dismissed the complaints, without considering the question of infringement, because he held that the single claim was invalid; and, as we agree with that conclusion, we shall do the same. The validity of the claim depends upon whether the prior art either actually anticipated it, or so closely hedged it about as to leave no room for invention. Gomberg's disclosure was of "bobbins for holding yarns, threads and strings," and was so simple that the claim itself contains an adequate description of the invention: "A yarn bobbin comprising a body member of flexible material provided at one end with a pair of prongs adapted to contact one another at the free end and defining a circular opening, said prong ends being in the same plane as said body member and separable by flexing in a plane at right angles to the plane of said body member and at the longitudinal center thereof and means at the other end of said body member for receiving the turns of the yarn coiled around the body portion through the opening, said prongs controlling the winding and unwinding of the coil." The bobbin has had an amazing success; more than 7,000,000 have been sold in six years, for which the public has paid $745,-000. There can be no doubt that, whatever the art had in its unknown recesses, practically speaking with the advent of the bobbin a long existing want began to be adequately supplied, and with means which have proved of the greatest convenience to those who knit in yarns of many colors; for it enables them quickly and easily to pay out the length of yarn of any color which they will need before passing to another color. Unfortunately for the patentee, that is not the test of the validity of a claim. We shall confine our discussion to two patents out

of many cited by the defendants: British Pat. No. 2321, of 1869, issued to Samuel Tatton; and Pat. No. 1,058,925, of 1913, issued to L. Toegel.

The purpose of Tatton's disclosure was to prepare "threads, silks, or cottons * * * upon cards in such a manner that a single length can be withdrawn at a time." The disclosure did not say that the "cards" must be made of any particular substance; except that they need not be of paper, and might include "thin strips or pieces of wood, vulcanite or other composition." They could be "of any length and width," but were to have holes at the opposite ends of their longer axis, some of which had slits leading out to the edge of the "card." In use, the "threads, silks or cotton" were passed from the "outer edge of the card" through the slits into the holes, which could be done, because the card "admits one of the sides being bent slightly from the other to allow of a number of lengths being passed into the holes freely." The word "thread" included yarns, for it was said to cover "worsted, mohair, twist and all other kinds of filamentous threads, capable of being used with a needle or some such implement for sewing or working." Thus, Tatton's "cards"—taking them as disclosed and independently of their declared use— literally anticipated all the features of Gomberg's disclosure, except that they did not have the "semi-circular cut-out portion, 11, at the end portion, 12." This feature the claim described as "means at the other end of said body member for receiving the turns of the yarn coiled around the body portion"; but obviously that did not expressly limit the claim to "the semi-circular cut-out portion, 11." Nor indeed does the plaintiff so argue; it goes much further, for its brief asserts that the Lobl Patent— No. 2,422,358—"has lifted the very elements by which Gomberg solved the existing problem"; and the Lobl Patent varied far more from Gomberg's disclosure than did

Tatton. The yarn was not wound through the holes at either end of the bobbin, but around its body on the shorter axis, being passed through the holes at either end only in order to secure it from being paid out for greater lengths than were desired. Whether the claim would in any event admit of as great a latitude of interpretation as this, we need not say; but it is plain that it should not be confined to the open-ended semi-circle of the disclosure. And even though it were, it is inconceivable that it could rest upon changing the means "for receiving the turns of the yarn" to a semi-circle from a slitted full circle.

■ It is true that Tatton designed his "cards" for a purpose altogether different from Gomberg's; as we have said, they were intended as a convenient device for drawing out single threads from a skein without tangling the rest. We agree that even if Gomberg had known this patent, which he did not, it would have been an act of exceptional originality to think of using it for a purpose so different from that for which it was intended; and, if any change in its structure had been necessary to anticipate the claim, we will not say that his bobbin would not have been an invention. It is, however, a complete answer that no change of structure was in fact necessary, because no new use of an old device will ever support a patent. That is not to say that the grant of a patent for a new use would be beyond the scope of the constitutional powers of Congress, which extend to "discoveries"; it follows from the fact that Congress has been content since the beginning to limit the exercise of its powers to an "art, machine, manufacture, or composition of matter".[1] This has been so often decided, and we have ourselves so often discussed it, that we need do no more than cite the decisions.[2]

■ Moreover, the same result follows from an examination of Toegel's "reel"— Pat. No. 1,058,925—though in this case the

1. § 31, Title 35, U.S.C.A.

2. Voightmann v. Perkinson, 7 Cir., 138 F. 56. Weir Frog Co. v. Porter, 6 Cir., 206 F. 670. Rauch & Lang Carriage Co. v. Hanlon, 6 Cir., 233 F. 673, 675. H. C. White Co. v. Morton E. Converse & Son Co., 2 Cir., 20 F.2d 311, 313. Regar & Son v. Scott & Williams, 2 Cir., 63 F. 2d 229. Oilgear Co. v. J. N. Lapointe Co., 2 Cir., 65 F.2d 380, 383. Hookless

reasoning is the reverse of that applicable to Tatton's "cards." In the case of Tatton the disclosure fitted upon Gomberg's claim literally, but the use disclosed was different. In the case of Toegel the use was the same, but the disclosure was different in minor details. We say that Toegel's declared use was the same, because his "reel" was for "holding clothes-lines * * * chalk-lines, plumb-lines, etc." and "fish-lines"; and certainly "chalk-lines," "plumb-lines" and "fish-lines" are kinds of "strings." In obedience to the artificial limits which the statute puts upon invention, we must charge Gomberg with an acquaintance with Toegel's "reel," including the use for which it was designed; so that the only remaining question is as to the changes he made. Toegel's handle, 9, was expressly made optional, and we may ignore it; and the only other change was to make "the converging ends, 6 and 7" touch, instead of approaching to "slightly less than the diameter of the line" to be used; and to make one or both of the "ends" resilient enough to admit the "line." Just as it was, the "reel" would have answered all the purposes of Gomberg's bobbin; the "converging ends" would have been brought together to a distance "slightly less than the diameter of the line"—*i. e.*, the yarn— "but only sufficiently less to prevent the line from unwinding itself." We cannot think that, if an exact reproduction of Toegel's "reel," properly reduced in size, and made of thin wood or metal, had proved awkward in practise, when used as a bobbin for yarn, it required more than very ordinary ingenuity to make the changes we have just mentioned. Therefore, even without Tatton we hold that the claim would be invalid because the necessary changes did not require invention. Perhaps it would be desirable that an inventor should not be charged with acquaintance with all that the patent offices of this and every other country contain, and with all that has ever been publicly sold or used in the United States; although in that event it would be an inevitable corollary that infringements should be limited to plagiarisms. With such considerations we have nothing to do; as the law stands, the inventor must accept the position of a mythically omniscient worker in his chosen field. As the arts proliferate with prodigious fecundity, his lot is an increasingly hard one.

Judgment affirmed.

Fastener Co. v. G. E. Prentice Mfg. Co., 2 Cir., 68 F.2d 848. Ingersoll-Rand Co. v. Worthington Pump & Machinery Corp., 2 Cir., 87 F.2d 320. Kellogg Switchboard & Supply Co. v. Michigan Bell Telephone Co., 6 Cir., 99 F.2d 207, 212. In re Parker, 107 F.2d 612, 615, 27 C.

C.P.A.(Patents) 717. Gillman v. Stern, 2 Cir., 114 F.2d 28, 30. In re Thuau, 135 F.2d 344, 30 C.C.P.A.(Patents) 979. Old Town Ribbon & Carbon Co. v. Columbia R. & C. Mfg. Co., 2 Cir., 159 F.2d 379.