**LENOX v. LANDERS.**

Civ. No. 9152.

United States District Court
E. D. New York.

Dec. 28, 1950.

Paul Kolisch, New York City, for plaintiff (J. Pierre Kolisch, New York City, of counsel).

Harry C. Bierman, New York City, for defendant.

BYERS, District Judge.

This is a suit concerning plaintiff's Patent No. 2,434,363 covering a cardboard spool upon which ribbons, etc., are wound, namely, the device which holds the core or body in firm engagement with the top and bottom discs.

The only issue requiring discussion is that of validity. The defendant offered no testimony, and the non-meritorious contentions argued for him concerning the defendant's part in producing the accused device, the place of its manufacture, alleged prior use, and infringement, find sufficient refutation in plaintiff's case to center attention at once upon the only serious issue, of whether patentable invention has been demonstrated in the plaintiff's case.

The important claims are the following:

"5. A spool head assembly for attachment to relatively resilient tubes comprising: a perforated head, a relatively rigid cylinder clamping the head around the perforation, the diameter of the cylinder being smaller than the inside diameter of the tube to which it is to be fastened, and a slanting projection from the cylinder having a larger diameter than the inside diameter of the tube whereby the cylinder clamped to the head may be forced within an end of the tube against the resiliency thereof without damaging the tube, but will be held against withdrawal by engagement between the projection and tube.

"6. The spool head assembly according to claim 5, and in which the projection is a flange projecting at an acute angle from the cylinder.

"7. The spool head assembly according to claim 6, and in which the flange projects from the free end of the cylinder."

The rigidity of the tests to be applied, in seeking to resolve the issue, appears from two recent appellate decisions:

█ Merit Manufacturer Company v. Hero Manufacturing Co., Inc., and Gimbel Brothers, Inc., 2 Cir., 185 F.2d 350, decided November 22, 1950, in which the Court says: "perhaps it would be desirable that an inventor should not be charged with acquaintance with all that the patent offices of this and every other country contain, * * * ; although in that event it would be an inevitable corollary that infringements should be limited to plagiarisms. With such considerations we have nothing to do; as the law stands, the inventor must accept the position of a mythically omniscient worker in his chosen field. As the arts proliferate with prodigious fecundity, his lot is an increasingly hard one."

That the foregoing is particularly apposite to this record will presently appear.

See also the decision announced by the Supreme Court on December 4, 1950, Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corporation, etc., 71 S. Ct. 127.

It is in the light of the austere standards applied in these latest cases that the patentability of the Lenox invention must be examined.

Plaintiff's device is a metal fastener in the form of a shallow cylinder, the upper and lower circular edges of which rigidly fasten the core of a cardboard spool to its top and bottom elements made of the same material.

The patent drawing somewhat distorts the actual relation between the inner diameters of this cylinder at the top and bottom, respectively, although in fact the former is smaller than the latter.

When the core or barrel of the spool is to be united to the top, this cylinder is inserted into a circular opening in the top disc of substantially the same diameter as the top of the cylinder, which then projects

sufficiently above the disc to provide metal which is turned down "to form a bead" or collar around the circular opening in the disc. The cylinder of course projects downward and flares outwardly at its bottom, and the edges of that flare or flange incline upwardly at an angle. It is the upward thrust of that flange, in circular form against the interior of the core, which does the anchoring. Since the core of the spool is to ride over that curved flange, in the assembly of the spool, the relation between the outside diameter of the cylinder bottom as so formed, and the inside diameter of the core of the spool is of importance if the core and top are to be held in firm and lasting engagement. This is explained in column 2 on page 1 of the specifications as follows: "* * * it was determined that with a spool of a given size and resiliency, the diameter of sleeve 3 (here called the bottom of the cylinder) measured to the tip of flange 11 (idem) had to be of the order of one twenty-thousandth of an inch greater than the inside diameter of traverse 10 (i.e. the core of the spool) in order to secure the traverse properly to the head."

In operation, the core is forced over the bottom of the fastener (record, page 6: "* * * the user after winding a ribbon on the traverse (core) may simply insert the metal clamp (the patented device) into the end of it, and then by bearing down on it, or hitting it with a hammer, will press it into the traverse (core) so that it is impossible to move it. No special tools are required."

The same process applied to the other end of the core completes the assembly of the spool.

The utility of the device lies in the ease with which the tubular structure of the core, and the discs forming the top and bottom of the spool can be shipped, handled and stored pending assembly into completed units. The fastener which has been described is of course a separate element until the spool is completed. No special tools are required to complete the formation of the spool, which is of some importance.

While the evidence is somewhat limited, it is sufficient to support a fair inference that Lenox perfected an extremely useful device which was new in any practical sense, and came to be used in such quantities in the limited field which it served, that the defendant promptly and profitably copied it, and has thus reaped a reward from labor, talent, and skill in adaptation, to which he made no contribution.

It is also true that many other persons entertained the purpose of providing means for accomplishing the result to which the Lenox Patent is addressed, and they also obtained Patents, which became part of this particular branch of knowledge called the Art, which must be consulted if the nature of the Lenox contribution thereto is fairly to be understood.

The plaintiff's brief describes it thus: "Briefly, the patentable concept is a circular clamp for a paper spool, one part or sleeve of which is of relatively small diameter" (the top which is flattened in forming the bead) "and firmly attached to the spool head and another part or sleeve of which is of relatively large diameter and has a continuous up-turned flange which will wedge the head to the traverse." (Called herein the core.)

A numerically formidable array of Patents is cited against Lenox, many of which seem to contribute volume rather than weight to the argument. A few will be commented upon, as follows:

*Dunlap No. 1,885,693:* This Patent teaches an outer collar to hold the core, thus presenting a larger circumference in that area, than elsewhere on the winding surface. The collar seems to be crimped radially at its lower end "so as to be embedded slightly in the material of" the core. This also provides "a smoother junction between the winding surfaces of the fastening element and the barrel or body member" (the core) but the two circumferences are still present. Dunlap seems to mistrust the efficacy of the fastening thus far portrayed, for he continues (line 88 on page 1): "As a further means for more rigidly securing the fastening element to the body member, a spur or prong 21 may be struck inwardly

from the material of the cylindrical portion 13 of the securing element" (the collar) "so as to be embedded in the body member" (the core).

He says the connection between core and end may be reinforced by the insertion (within the core) of a plug or bushing at the top. Incidentally, other patentees contemplate a similar fortuitous reinforcing element in their structures.

A reading of the claims and specifications of this Patent would not suggest the solution of the problem as Lenox saw it, in my opinion. The engagement of the flange, as shown by Lenox, with the interior of the core in the disclosure of his invention is not seen to be a consequence of anything revealed in the Dunlap Patent. The practical value of maintaining a uniform circumference of the winding surface of the core for its entire length, achieved by Lenox and sacrificed by Dunlap, is necessarily involved in the use by Lenox of a means of securing the core to the end by a device providing for interior engagement only.

*Clark No. 1,542,611:* The essential feature of this Patent is a thin fastening device, circular in form and resembling a washer, equipped (Fig. 5) with a rather complex set of arms which project upwardly from its perimeter, which arms are provided with spurs or teeth, and those are pressed into the interior of the core, as the result of spreading the arms or lugs outwardly. This is accomplished by applying "a cylindrical tool or mandrel * * * forced a distance into the lower end of the core" (lines 99 et seq. on page 1). This action apparently secures the upper fastening to the top of the spool (id.107) "and the teeth 20 (on the exterior of the said perimeter not above referred to) to be firmly pressed into the material of the head, and then to spread the lugs outwardly and firmly press them against the inner surface of the core, and cause the teeth 14 (referred to above) to be firmly embedded or pressed into the material of the core".

These quotations have been indulged, for they direct attention to what this case comes down to in lowest terms: Whether patentable invention resides in the substitution of a flange as in Lenox, for a series of teeth or spurs as in Clark (and others), the common office of which is to provide a firm engagement within the core, that shall hold it to the top of the spool as completely formed.

The point was thus clearly stated by plaintiff's counsel on the argument (page 76): "In other words, this old patent of 1901 (Buedingen No. 668,974 not cited by the Examiner) had everything that Lenox had except that instead of the flange it had projections which engaged at discreet points the inside of the tube. That scheme had been discarded many years ago."

And again at pages 79–80: "The patentable concept is the formation of a clamp of that nature which is therefore fastened to the disc by turning over one edge, and which forms a flange larger enough on the other hand so it will fit into the traverse (core). Unless that is inventive, naturally Lenox made no invention."

Other patents, which teach means for securing the top or disc to the core of the spool as the result of interior engagement of the latter by teeth or similar projections formed on and constituting a part of the securing member, include *Laveau No. 1,999,765, Sobota No. 2,049,334,* and *Hamilton (British) No. 278,217.*

It is unnecessary to discuss the details of each, since the present problem is to come to a reasoned opinion as to whether patentable invention can be predicated of a flange which bites into or thrusts against the inner surface of the core in one plane, in place of a number of teeth or spurs operating similarly.

The Examiner was persuaded that there was such an advance in the flange construction over that of the teeth or spurs of Forney (outside grip), Clark, and Hamilton, as to meet the requisites of a valid patent.

When it is realized that if a row of projections, or spurs or teeth as in Buedingen, Clark or Hamilton, are sufficiently numerous and so disposed as shown in these patents, a circle would be formed for interior engagement of the tube; the difference between such a circle and a flange would be

464

theoretical only. In other words, the step from spurs engaging at "discreet points", to a flange engaging at all points, does not seem to be of such intrinsic magnitude as to involve patentable invention, in the opinion of this Court as guided by the cases above cited.

While the development of a four point interior engagement into one having a greater number of such points or spurs, and thence into a circular flange, may not have been inevitable—and the number of patented structures which are said to have failed, plus the lapse of time between the earliest and latest of the unsuccessful efforts, so indicate—the progress from the one concept to the other was sequential.

There is a certain temerity exhibited when any agency such as a court, lacking either practical experience with the problem involved, or demonstrated capacity to solve it, undertakes to decide whether a given step forward was long or short, or even intelligently directed.

The Court merely strives to deal with evidence as best it can, and with appropriate humility—at least at the level of maximum inferiority.

The conclusion here come to is opposed to that of the Examiner in the Patent Office, which was announced about four years prior to the decisions first above referred to.

This Court has not brushed aside the obvious imitation practiced by the defendant in selecting and copying the plaintiff's device rather than any of those shown in the numerous Patents cited on his behalf.

Nor the fact that the earlier Patents seem to establish but an accumulation of futility so far as concerns the turning out of an operable and effective device.

However equitable it might be otherwise to yield to such reflections in behalf of one who was the first to solve a problem which had been recognized at least from 1901 when Buedingen filed, and whose device, as I think, is not to be minimized as "a gadget", there is a binding direction to the contrary, if Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corporation, etc., supra, is understood.

Claims 5, 6 and 7 of Lenox are for a combination, that is, a spool head assembly comprising:

(a) Perforated head (the top of the spool);

(b) Relatively rigid cylinder (the device here discussed) as described;

(c) A slanting projection from the cylinder (the upward turn of the flange, diameter described and reason given) and effect.

■ These are clearly old elements, and no "change in their respective functions" is disclosed, which is the test of patentable invention in the opinion of the Court as stated in the third paragraph from the end of the opinion.

It follows, therefore, that since plaintiff must be deemed to have failed to sustain the validity of his Patent, the defendant is entitled to a decree of dismissal, but without costs, to be settled on notice.