LENOX v. LANDERS.

No. 229, Docket 21955.

United States Court of Appeals
Second Circuit.

Argued April 4, 1951.

Decided April 30, 1951.

Paul Kolisch, of New York City (J. Pierre Kolisch, of New York City, on the brief), for plaintiff-appellant.

Harry C. Bierman, of New York City, for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In his brief on appeal from Judge Byers' reasoned decision against his patent, D.C.E. D.N.Y., 94 F.Supp. 460, plaintiff gives the following succinct statement of the background and effect of the claimed invention:

"The invention has to do with spools for silk ribbons and the like, and its essential feature is a peculiarly constructed metal clamp for holding a paper traverse tube of a spool to the spool head, also made of paper.

"The most convenient way of using spools in the ribbon business is to buy them in disassembled or knockdown condition, the heads stacked separately from the traverse tubes, because shipping and storing completed spools takes up too much space. The ribbon is wound on the traverse and then a head is fastened to either end of the traverse to complete the assembly of the spool. Lenox invented a new clamp for fastening the head to the traverse.

"Prior to the Lenox invention, paper heads were fastened to the paper traverse by glue, rivets, nails, staples or some other means which required special tools to assemble the spool (App., p. 4a).[1] The old way of fastening was not only slow and expensive, but unsatisfactory in that the heads were likely to come off, or the spool parts or ribbon became damaged in the assembling process.

"Lenox spent about three years, and all his money, to devise a clamp with which an unskilled worker in a ribbon factory could quickly assemble sturdy spools without the use of special tools, glue, cement, etc. (App., p. 7a). Finally in 1945 he succeeded in producing experimental models and in April, 1947 the commercial device described in the patent (App., p. 7a). The Lenox spools gained widespread recognition in the trade as evidenced by the five-fold increase in Lenox's sales during the past three years (App., p. 10a)."

This clear exposition does show that, however useful the patented device may have been, it is a simple structure. It consists of a shallow metal ring, of which the smaller side is secured to the paper head of the spool by a bead and the larger side, containing a circular flange, is inserted into the paper traverse tube and locked there by the flange. The patent—which is No. 2,434,363, issued to the plaintiff on

---

1. The reference citations are to testimony of the plaintiff Lenox.

January 13, 1948—describes the metal cylinder or clamp as consisting of two sleeves, the smaller with its bead against the head, the larger joined to this and forming a stiff backing for the paper around the perforation of the head, but having as its chief function the attachment to the traverse by means of an upturned flange of circular contour. So, as plaintiff says, the important inventive feature of the metal clamp is the flange in the free end of the larger sleeve. The diameter of the flange must be carefully fashioned to be slightly, but only slightly, greater than that of the traverse, so that it is forced in by blow of the fist or mallet, without tearing the tube and thereafter holds tightly.

In practice, the manufacturers ship the metal clamps already beaded to the heads, and the ribbon cutters assemble them on the paper traverses on which lengths of ribbon have been wound. The formation of each spool is completed by adding a head in the same way to the other end of the traverse. Imitation amounting to infringement seems reasonably clear—the defendant offered no oral testimony—and we turn at once to the question of validity.

The prior art relating to patents for improvements in spools appears to have been rather crowded. We can discard those patents which do not come close to the device we have here. Left are several which deal with devices for holding the head on to the traverse through a series of teeth or spurs. In the old patent of Buedingen, No. 668,974, in 1901, the parts were held in the spindle by forming "indentations or projections extending outwardly and into the material of the spindle." In Clark No. 1,542,611, 1925, the head was held to the core by a piece of soft sheet metal containing lugs armed with "lateral projections or teeth." In Laveau No. 1,999,765, 1935, there were two rows of teeth, re-entrant so as to be forced into the traverse to hold against extraction. So the Hamilton British patent No. 278,217 of 1927 has "spikes." As Judge Byers said, the difference between a circle of teeth or spurs or spikes, for interior engagement of a tube, from a cir-cular flange for the same purpose, "would be theoretical only," and "the step from spurs engaging at 'discreet points,' to a flange engaging at all points, does not seem to be of such intrinsic magnitude as to involve patentable invention." 94 F.Supp. 460, 463, 464. Plaintiff asserts that teeth would score the inside of the traverse as they entered. So the flange would mark the traverse if pressure was exerted to separate it from the tube. But since the spools are made to be discarded after a single use, it is difficult to see what difference any of this makes. Finally Sobota, No. 2,049,334, 1936, uses not teeth, but a "corrugated surface 18 effectively frictionally engaging and to some extent penetrating the bore wall of the tube 10."

We therefore agree with Judge Byers that this device does not show the novelty required under the present high standard of patentability. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127; Crest Specialty v. Trager, 71 S.Ct. 733; Merit Mfg. Co. v. Hero Mfg. Co., 2 Cir., 185 F.2d 350; Paramount Industries v. Solar Products Corp., 2 Cir., 186 F.2d 999.

Judgment affirmed.