## FOSTER D. SNELL, Inc., v. POTTERS et al.
### No. 268.

Circuit Court of Appeals, Second Circuit.

March 8, 1937.

Hammond & .Littell, of New York City (Nelson Littell, of New York City, of counsel), for appellant.

Leonard Day, of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The patent in suit was granted to the plaintiff's assignor on February 11, 1936, for "Method of Producing Mirrors." Fifteen days later the plaintiff filed its bill of complaint charging that the firm of Potters Bros. were infringing its patent by manufacturing mirrored glass flakes. Such flakes simulate artificial snow and are used for Christmas tree decoration and the like. The bill also alleged that prior to the issuance of the patent Potters Bros. had been licensed to use the invention described in the patent application, and that they had continued to use the process after surrendering their license. The prayer was for an injunction against use of the patented process, and for an accounting of profits resulting from infringement of the patent and an accounting of royalties owing by reason of the defendants' use of the process prior to the issuance of the patent. The defendants' answer pleaded invalidity of the patent and noninfringement. The decree held that there was no infringement and that all four of the patent claims were invalid for lack of invention over the prior art; it dismissed the bill upon the merits, with costs to the defendants.

In so far as the suit was based on the patent, the appeal may be disposed of upon the single ground of noninfringement. There are two complete answers to the charge of infringement. In the first place, the evidence is uncontradicted that there was none between the granting of the patent on February 11, 1936, and the filing of the bill. Rudolph H. Potters testified, and his testimony was uncontradicted, that throughout the month of February and down to the time of trial in June the defendants manufactured no glass flakes whatever. It is true that the plaintiff's agents purchased glass flakes at the defendants' plant in February and in June, but there is no proof as to when or by what process these were made. The defendants' answers to the plaintiff's interrogatories cannot be taken as contradicting the positive testimony that no glass

flakes were produced after the patent issued. A mere sale of the product of the process does not constitute an infringement of a process patent. Welsbach Light Co. v. Union Incandescent Light Co., 101 F. 131 (C.C.A.2); In re Amtorg Trading Corporation, 75 F.(2d) 826, 832 (Cust. & Pat. App.), and cases therein cited.

Secondly, the process used by the defendants omits one of the steps described and claimed in the patent. The first three claims expressly require a chemical cleaning of the glass flakes. Admittedly the defendants use no nitric acid or other chemical for cleaning; and these claims are no longer relied upon by the appellant. The fourth claim reads as follows: "4. The method of producing clear silvered glass flakes, which comprises cleaning the glass flakes, washing the cleaned glass flakes, treating the glass flakes with a freshly prepared dilute stannous chloride solution, washing the glass flakes with water, plating the glass flakes with a solution of silver nitrate and dextrose, washing the plated glass flakes and drying the same."

This plainly contemplates two steps, (1) cleaning and (2) washing the cleaned glass flakes, before using the stannous chloride solution. The plaintiff argues that these two steps may be combined into the single step of washing with tap water. This contention is made necessary because the defendants' procedure is to dump a batch of glass flakes into a copper tumbling barrel, pour in tap water, add crystals of stannous chloride and tumble the flakes in this solution for twenty minutes or more. The liquid is then poured off, fresh water added, and the tumbling continued for a few minutes. Pouring off, filling with fresh water, and tumbling is repeated four times, before the flakes are silvered with silver nitrate and a precipitant of dextrose. A study of the specifications confirms what is obvious from the claim itself, that prior to the stannous chloride treatment there is a cleaning step followed by a washing step. "The glass is first cleaned" with chromic acid followed by nitric acid, or by washing with an alkali, as the art had done before. "The acid or alkali is then thoroughly washed from the cleaned glass surfaces." Column 1, lines 45–51. Or the glass may be "pickled" for several hours and then washed with distilled or tap water. Column 2, lines 10–19. The reference relied upon to show that the cleaning step may be done by tap water (page 2, col. 1, lines 3–5) means nothing of the sort; it says merely that the glass flakes may be washed with ordinary tap water before the "metallic salt treatment," i. e., the stannous chloride solution, as well as after. This cannot be construed as a statement that the carefully described cleaning step may be omitted. It refers to the washing step which follows, and is repetitious of what had already been said, except as specifying that ordinary tap water will serve for the washing mentioned in column 1, line 50. If Smith recognized that the initial cleaning was unnecessary, as appears from his letters to Snell, the fact remains that he did not patent a process with the step omitted. Instead, in three of the four claims he specifically described an initial chemical cleaning, and in the fourth a cleaning and a washing before the stannous chloride treatment. The defendants do not "clean" the glass flakes in any such sense as the patent means by cleaning, and therefore they do not practice the patented process.

In so far as the bill sought an accounting of royalties owing by reason of the defendants' alleged use of the process prior to the issuance of the patent, the District Court lacked jurisdiction of the controversy. There is no diversity of citizenship between plaintiff and defendants; nor is the cause of action, which must be based on wrongful use of confidential information obtained as licensee, so inseparably connected with the statutory wrong of patent infringement as to come within the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. Obviously, the nonfederal cause of action is separate and distinct from the federal cause of action, as was true with respect to the uncopyrighted revised version of the play in the Hurn Case; it relates to a different period of time, and depends upon facts which are irrelevant to proof of the federal cause of action. Stark Bros. Co. v. Stark, 255 U.S. 50, 41 S.Ct. 221, 65 L.Ed. 496, is a flat authority that an action for damages resulting from unfair competition prior to registration of the plaintiff's trade-mark is not within the federal jurisdiction. We do not read the opinion in Hurn v. Oursler as overruling that decision, and we think it controls the case at bar. Accordingly, the decree was correct in dismissing the bill of complaint up-

on the merits with respect to the charge of patent infringement, but should have dismissed it for lack of jurisdiction in so far as it sought recovery for acts of the defendants done prior to the issuance of the patent. Thus modified the decree is affirmed, with costs to the appellees.