**(STRACHMAN v. PALMER et al.**

**Civ. A. No. 6020.**

United States District Court
D. Massachusetts.

Jan. 18, 1949.

Arthur T. Wasserman, of Boston, Mass., for plaintiff.

Paul F. Perkins, of Boston, Mass., for defendants.

WYZANSKI, District Judge.

Plaintiff, a citizen of Massachusetts, filed a complaint against the Canadian Pacific Railway Company, a Canadian corporation, the Boston and Maine Railroad, a Massa-

chusetts corporation, and three individuals —one of whom is a Massachusetts citizen— who are trustees of the New York, New Haven and Hartford Railroad Company, a corporation organized under the laws of Massachusetts. His complaint on its face related to the loss or damage of more than twenty cows involved in five consignments shipped from Canada to the United States. And paragraph 3 of the complaint stated that the action arose under 49 U.S.C.A. § 20(11), which compiles the Carmack amendment to the Interstate Commerce Act together with the first Cummins amendment, Act of Mar. 4, 1915, c. 176, 38 Stat. 1196, and other amendments.

The defendants did not move to dismiss or challenge the jurisdiction of this Court. Instead they answered and proceeded to trial.

On the basis of the testimony I find that the facts are as stated in the three following paragraphs.

Each shipment began at a point in Canada on the Canadian Pacific line; was transported by that carrier to Wells River, Vermont; thence by the Boston and Maine to Lowell, Massachusetts; and thence by the New York, New Haven and Hartford to Fall River, Massachusetts. At the Canadian point of origin, the shipper and the carrier executed for each shipment a "live stock-special contract-shipping o r d e r". This was a through bill of lading for the whole transportation. The two pertinent parts of that contract were section 1, limiting the carrier's liability to $150 a cow, and section 3, providing that the carrier should not be liable for "injury not occurring on its portion of the through route." This contract, its terms and rates were in accordance with the form of "Live Stock Bill of Lading" approved by the Canadian Board of Transport Commissioners, Order No. 298, June 2, 1920, and complied with the Canadian Railway Act, Can.Rev.Stat. c. 170, § 348. Bodnoff v. Canadian Pac. Ry. Co. [1946], S.C.R. 392, 395, 396.

The five consignments of cows were all in good condition when they were shipped from the Canadian point of origin. With one exception all the cows were in good condition when they were delivered in Vermont by the Canadian Pacific to the Boston and Maine. That exception was a cow shipped on March 23, 1943 by plaintiff either from Winchester, Ontario [Pl.Ex. 7] or Mountain, Ontario [Pl.Ex. 8]. The Canadian Pacific without excuse held that cow in Vermont for about six weeks. It then delivered it to the Boston and Maine which delivered the cow to the New York, New Haven and Hartford which in turn delivered the cow to plaintiff May 8, 1943. If the cow had been seasonably delivered, it would have been in good shape and would have been worth $350. But the unreasonable delay caused the cow to become skinny and to stop giving milk. Its value on delivery to plaintiff in Fall River was only $70. Plaintiff filed claim for the cow April 24, 1943 [Pl.Ex. 10].

The other cows as to which plaintiff complains were all injured during their transportation by either the Boston and Maine or the New York, New Haven and Hartford. For reasons which will become apparent later it is unnecessary for me to find whether the injuries to these cows were attributable to the natural propensity of animals penned in cars or were due to rough handling by the railroads.

▮ I. The first question is whether plaintiff's complaint alleges causes of action under the Interstate Commerce Act In my opinion it does not. The first Cummins amendment, stated in the margin,[1] is the only part of that Act which could con-

---

[1] "Any common carrier * * * subject to the provisions of this [Interstate Commerce] Act, receiving property for transportation from a point in one State * * * to a point in another State * * * or *from* any point in the United States *to* a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it or by any common carrier * * * to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier * * * from the liability hereby imposed; and any such com-

ceivably apply to the facts alleged; and the reasons why it does not govern imports to the United States from Canada have been fully stated in a well considered opinion by Judge Parker in Alwine v. Pennsylvania R. Co., 141 Pa.Super. 558, 15 A.2d 507, which I shall follow instead of the contrary opinion rendered in Goldberg v. Delaware L. & W. R. Co., Mun.Ct. of N. Y., 40 N.Y.S.2d·44.

The first Cummins amendment read literally applies only to shipments originating in the United States. The Interstate Commerce Commission has construed the amendment as applicable only to wholly domestic shipments and to exports from the United States to adjacent countries, but not to imports. Heated Car Service Regulations, 50 I.C.C. 620, 623, 2nd full paragraph; Bills of Lading Cases, 52 I.C.C. 671, 726-729 (1919). [See also tariffs filed with I.C.C. and introduced here in evidence as Exs. B and C.] After that construction Congress, although it amended other parts of the Carmack and Cummins amendments, did not change this part.

The ·reasons why Congress did not make the change are not far to seek. It is true that where a Canadian carrier accepts in Canada a shipment to be imported to the United States on a through bill of lading Congress could regulate the carrier's liability for events occurring *after* the shipment entered the United States. News Syndicate Co. v. New York Central R. Co., 275 U.S. 179, 48 S.Ct. 39, 72 L.Ed. 225. But it is at least doubtful whether Congress could constitutionally regulate the Canadian carrier's liability for an event *prior*

thereto occurring in Canada in connection with a contract made in Canada by a Canadian corporation which happened to carry on some operations in the United States. Southern Pacific R. Co. of Mexico v. Gonzales, 48 Ariz. 260, 61 P.2d 377, 106 A.L.R. 1012. When a shipment from Canada to the United States is damaged, it is usually uncertain whether the damage occurred in Canada or the United States. To presume that the damage occurred in that part of the journey which Congress could clearly regulate might raise problems of constitutional delicacy. Even if those problems were eliminated, the presumption might seem to laymen to be unfair.

Plaintiff's citation of Galveston, H. & S. A. Co. v. Woodbury, 254 U.S. 357, 41 S.Ct. 114, 115, 65 L.Ed. 301, is inapplicable. In that case the ultimate issue was whether a plaintiff who lost his personal baggage on a trip from Canada to the United States could recover more than the $100 to which the carrier had purported to limit liability in its published tariff. In giving a negative answer, Mr. Justice Brandeis reasoned as follows: (1) the Interstate Commerce Act covers carriers "engaged in the transportation of passengers or property * * * from any place in the United States to an adjacent foreign country"; (2) the evidence in the Galveston case showed that the railway transported baggage from an adjacent country to the United States; (3) while the evidence in the Galveston case on this point did not show that the railway also transported baggage to an adjacent country from the United States, it may be presumed that the railway did in fact transport bag-

mon carrier * * * so receiving property for transportation from a point in one State * * * to a point in another State * * * or *from* any point in the United States *to* a point in an adjacent foreign country * * * shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled *to* recover thereon * * * for the full actual loss, damage, or injury to such property caused by it or by any such common carrier * * * to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstand-

ing any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void."

The amendment just quoted was later, by the so-called Newton amendment, modified as to some types of property, but the modification did not embrace ordinary live stock including cattle of the type here involved. Act of Aug. 9, 1916, c. 301, 39 Stat. 441, 442.

gage to Canada since a carrier engaged in transportation by rail *from* an adjacent foreign country is, at least ordinarily, engaged in transportation also *to* that country from the United States;[2] (4) since the carrier was presumed as a matter of fact to be operating in both directions it comes within the Interstate Commerce Act and is subject to all general provisions thereof which are universally applicable to all shipments by all carriers and is subject to such specific provisions as by their terms are applicable; (5) the provisions of § 2 of the Act of June 29, 1906, c. 3591, 34 Stat. 584, 587, 49 U.S.C.A. §§ 6, 41, are general provisions which allow all carriers subject to the Act to use published tariffs to limit liability for all shipments of passengers' baggage in all directions; (6) the Galveston Railway had published a tariff limiting to $100 its liability of any shipment of any passenger's baggage in any direction; and (7) therefore this limitation was valid regardless of the direction of the plaintiff's baggage.

Nothing in the Galveston case holds that a carrier subject to the Interstate Commerce Act cannot limit liability on a shipment of ordinary cows from Canada to the United States. The only sections of the Act relative to limitation of liability on shipments of ordinary cows are the first Cummins amendment and the Newton amendment. Those amendments are specific provisions which, though governing all carriers regulated by the Act, are applicable only to such shipments as originate in the United States. Thus, the test of the application of these amendments is two-fold: first, is the carrier's operation such as to bring the carrier within the general coverage of the Interstate Commerce Act,[3]; second, is the direction of the movement of the specific shipment in question from a point in the United States to a point either in the United States or in an adjacent country. Plaintiff in the case at bar meets the first but not the second test.

■ II. The second question is whether this Court should dismiss plaintiff's alleged cause of action under the Interstate Commerce Act on the merits or, on the contrary, for lack of jurisdiction.

An analysis of the complaint standing alone without resort to testimony reveals that the allegations fail to state a case under "any Act of Congress regulating commerce", which is the prerequisite of jurisdiction under 28 U.S.C.A. § 1337. Nor is a case stated under any other jurisdictional statute. Thus, it is arguable that the complaint should be dismissed for lack of jurisdiction on the basis that "the federal question averred" was "plainly unsubstantial". Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 106, 53 S.Ct. 549, 550, 77 L. Ed. 1062.

However, to dismiss on any basis other than the merits would be improper in the light of Bell v. Hood, 327 U.S. 678, 682, 683, 66 S.Ct. 773, 90 L.Ed. 939. The majority of the Supreme Court have indicated that where a lower federal court unaided by a Supreme Court opinion must interpret the application of a statutory or constitutional provision to the allegations of a complaint, the result is an adjudication on the merits. Perhaps the chief justification of this doctrine is that under it the determination by the federal court that no federal claim is involved is a determination which becomes the basis of an estoppel by judgment. Cf. Restatement, Judgments, § 49, Comment (a).

■ III. The third question is whether this Court should consider and determine plaintiff's common law causes of action against these defendants on account of these shipments of cows.

By the implied consent of the parties, testimony was received and arguments were made not only on the issue whether plaintiff could recover under the Interstate Commerce Act but also on the issue whether he could recover at common law if the Act did not apply. It is true that these common law causes of action were not specifically pleaded. But under the liberal provisions of Federal Rules of Civil Proce-

---

[2] It would appear that in Mr. Justice Brandeis' opinion, 254 U.S. at page 359, 3rd and 4th lines from the bottom of the page, 41 S.Ct. at page 115, there has been an inadvertent interchange of the prepositions "to" and "from" in the last full sentence on the page.

[3] 49 U.S.C.A. § 1 et seq.

dure, rule 15(b), 28 U.S.C.A., this Court is free to treat the common law causes of action as though they had been pleaded.

However, even if the common law causes of action had been pleaded, such causes of action as could have been alleged against the Boston and Maine and the trustees of the New York, New Haven and Hartford could not be determined by this Court. Such causes of action are not within its jurisdiction. Those two defendants are incorporated in the state in which plaintiff is a citizen. Thus, there is not the diversity prerequisite to the invocation of 28 U.S.C.A. § 1332.

But it may be suggested that the common law causes of action against these defendants are pendent to the statutory causes of action against them and that, therefore, under the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 1148, this Court has jurisdiction to decide the non-federal questions, even though it has decided to dismiss the causes of action involving the federal question. See Notes, 61 Harv.L.Rev. 372; 52 Yale L.J. 922. There has been some tendency to expand the pendent jurisdiction doctrine from the fields of copyright, trade-mark and unfair competition law to other types of controversies. Cf. McDonald v. Cape Cod Trawling Corporation, D.C.Mass., 71 F. Supp. 888, 891, and the opinion of Judge Clark in Treasure Imports v. Henry Amdur & Sons, 2 Cir., 127 F.2d 3 and his dissenting opinion in Musher Foundation v. Alba Trading Co., 2 Cir., 127 F.2d 9, 11 cited in Moore, Fed.Practice, Supp.1947, pp. 93-94 and in 61 Harv.L.Rev. 362. Yet this expansion seems of doubtful validity in view of the limitations of Article III, Section 2 of the United States Constitution. If such extension of Hurn v. Oursler is justified, it must be on the ground that, where in disposing of a federal cause of action a federal court is required to take the entire evidence necessary to resolve an almost parellel non-federal cause of action not otherwise subject to federal jurisdiction, it will serve everyone's convenience for the federal court to adjudicate both the federal and non-federal causes of action. Such a doctrine has no place in the case at bar. The federal causes of action should

have been disposed of by motion at the outset of the case. To decide them did not and does not require resort to any testimony. Where the complaint fails to allege any federal cause of action, the federal court should not consider unnecessary testimony solely for the purpose of disposing of a common law controversy not otherwise within its jurisdiction. United States Constitution, Article III, Section 2. Musher Foundation v. Alba Trading Co., 2 Cir., 127 F.2d 9; Treasure Imports v. Henry Amdur & Sons, 2 Cir., 127 F.2d 3, 6; Bell v. Hood, D.C.S.D.Cal., 71 F.Supp. 813. See Frank, J., dissenting, Clark v. Taylor, 2 Cir., 163 F.2d 940, 947. It follows that the common law causes of action against the Boston and Maine and the New York, New Haven & Hartford must be dismissed for lack of jurisdiction.

IV. The common law cause of action against the Canadian Pacific stands on a different footing. Plaintiff's claim against that foreign corporation amounts to more than $3,000 even on the basis of $150 per cow. Thus, the common law cause of action against the Canadian Pacific comes within 28 U.S.C.A. § 1332(a)(2).

Having jurisdiction of that cause of action, I conclude on the basis of the findings that plaintiff has satisfied the burden of proving that the Canadian Pacific through its inexcusable fault caused injury to one cow which it unreasonably detained in Vermont. The injury amounted to at least the $150 maximum for which the Canadian Pacific agreed to be liable. Claim for that loss was made April 24, 1943. However, there is no evidence as to what the loss was on that date or on any date prior to May 8, 1943. Hence interest begins to run only from that date, and not, as in the usual contract case, from the date of claim. Plaintiff is entitled to recover from the Canadian Pacific $150 plus interest at six per cent from May 8, 1943.

Judgment shall enter, without costs, (1) dismissing on the merits as against all defendants the causes of action based on the Interstate Commerce Act, (2) dismissing for lack of jurisdiction as against the Boston and Maine and the trustees of the New York, New Haven and Hartford the causes

of action based on the common law, (3) for plaintiff against the Canadian Pacific on the common law cause of action in the amount of $150 together with six per cent interest from May 8, 1943 until the date of judgment.