**MARKERT et al. v. SWIFT & CO., Inc., et al.**

**No. 22, Docket 21677.**

United States Court of Appeals Second Circuit.

Argued Jan. 3, 1951.

Decided Feb. 9, 1951.

David Friedman, New York City, for appellants. Bernard A. Finkel, New York City, of counsel.

White & Case, New York City, for appellee. Thomas Kiernan and David Hartfield, Jr., New York City, of counsel.

Before L. HAND, Chief Judge, and SWAN and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This is an action brought by employees against their employers to recover unpaid overtime compensation pursuant to the provisions of the Fair Labor Standards Act

* § 1128d, Title 46 U.S.C.A.

of 1938, 29 U.S.C.A. § 201 et seq. The suit was commenced on January 16, 1947. Orders dismissing the complaint and refusing leave to amend were reversed by this court in March 1949,[1] and thereafter an amended complaint and the answer thereto were filed. Upon motion of one of the defendants, Van Wagenen & Schickhaus Co., a summary judgment was granted dismissing the second count of the amended complaint. The plaintiffs procured the certificate required by Rule 54(b)[2] and have appealed on the ground that issues of fact were in dispute which entitled them to a trial.

The first count of the amended complaint seeks overtime compensation on the theory that under the Portal to Portal Act[3] the employees were entitled to count as working time the time spent in preliminary and post liminary activities, such as changing into work clothes, repairing tools, etc. This count still remains for trial and is not involved in the present appeal. The second count, after incorporating by reference allegations from the first count concerning the nature of the defendants' business, their employment of the plaintiffs and the character of the work the employees perform in the processing and production of meats for interstate commerce, continued as follows:

"XXI

"The defendants have failed and refused to fully compensate the plaintiffs for such employment in accordance with section 7 of the Act; and the defendants have thereby violated the provisions of the said Act.

"XXII

"During all or part of the period commencing on or about October 24, 1938 and up to the present time, the defendants were required by law, regulation of the Department of Agriculture and by agreement, to furnish at their own expense, sterile uniforms to the plaintiffs for use during said employment; but the defendants charged the plaintiffs and plaintiffs paid from the weekly wages of each of the plaintiffs the sum of 50 cents (fifty cents) each week for such uniforms for the period commencing on or about October 24, 1938 and ended on or about June 1, 1945. The defendants received and retained said sums and have failed, neglected and refused to repay or return said sums to plaintiffs.

"Wherefore the plaintiffs demand judgment against the defendants * * * on the Second Count for the amount due to plaintiffs by reason of the facts alleged in Paragraph XXII of this amended complaint, together with an equal additional amount as liquidated damages * * *"

▮ The obligation of the defendants to furnish at their own expense sterile uniforms to the plaintiffs is alleged to have been imposed "by law, regulation of the Department of Agriculture and by agreement." No statutory "law" imposing such a requirement is mentioned by the appellants and we know of none. The Federal Meat Inspection Regulations issued by the Department of Agriculture upon which the appellants rely are set out in the margin.[4] The only provision of the Regula-

1. Markert v. Swift & Co., 80 F.Supp. 246; 2 Cir., 173 F.2d 517.

2. Fed.Rules Civ.Proc. Rule 54(b), 28 U. S.C.A.

3. 29 U.S.C.A. § 251 et seq.

4. 9 Code Fed.Reg. §§ 7.5f, 8.4a, 8.4d, 8.8:
"Section 7.5. *Facilities and conditions to be provided by establishment.* When required by the chief of the division or the inspector in charge, the following facilities and conditions, and such others as may be essential to efficient conduct of inspection and maintenance of sanitary conditions, shall be provided by each official establishment: * * *
"(f) Adequate arrangements, including liquid soap and cleansers, for cleansing and disinfecting hands, for sterilizing all implements used in dressing diseased carcasses, floors, and such other articles and places as may be contaminated by diseased carcasses or otherwise."
"Section 8.4. *Sanitary facilities and accommodations; specific requirements.* Adequate sanitary facilities and accommodations shall be furnished by every official establishment. Of these the following are specifically required:
"(a) Dressing rooms, toilet rooms, and urinals shall be sufficient in number, ample in size, and conveniently located. The rooms shall be provided with windows to admit direct, natural light and

tions which deals with the clothing to be worn by employees is section 8.8(d): "Aprons, frocks and other outer clothing worn by persons who handle any product shall be of material that is readily cleansed and only clean garments shall be worn." This imposes on the employees the duty to wear clean garments made of material readily cleansed; and no doubt the employer is also duty bound to see that his employees do wear such garments while at work. But certainly there is no express direction, and we see no basis for implying one, that the employer must furnish such garments at his own expense. On the contrary the opposite inference is reasonable because the Regulations specify various facilities and conditions which "each official establishment" must provide, and similar language would naturally have been used with respect to employees' clothing had it been intended that the employer should supply them with clean garments at his own cost.

Consequently if there was such a duty resting on the employer it must result from agreement with his employees. As to the allegation of "agreement" the affidavits of Mr. E. L. McCormick in support of the appellees' motion for summary judgment, deny the existence of such an agreement and state that the only contract was the one made with the union on June 1, 1945, which was retroactive to August 11, 1943. This contract, a copy of which was attached as an exhibit, did not require the employer to supply uniforms but provided that the employer would pay the employees "in lieu of actually furnishing the articles" fifty cents per week in addition to their regular wages. Mr. McCormick's affidavit states specifically that such additional sums have been paid and nothing has been deducted from the employees' wages as a charge for the furnishing of uniforms; employees were at liberty to procure uniforms where they pleased, and if an employee desired to purchase one from the appellee the purchase price thereof would be deducted from his next pay check. None of Mr. McCormick's assertions was contradicted by counter affidavit. Whether the union contract of June 1, 1945 required the employer to furnish sterile uniforms without cost to the employees presents a legal question of construction. Since we have construed it not to so require and since there was no denial of Mr. McCormick's affidavit that the only deductions from weekly wages were the price of uni-

shall have adequate facilities for artificial light. They shall be properly ventilated, and meet all requirements as to sanitary construction and equipment. They shall be separate from the rooms and compartments in which products are prepared, stored, or handled. Where both sexes are employed, separate facilities shall be provided.

\* \* \* \* \* \*

"(d) Properly located facilities for cleansing and disinfecting utensils and hands of all persons handling any product."

"Section 8.8. *Operations, procedures, rooms, clothing, utensils, etc., to be clean and sanitary.* (a) Operations and procedures involving the preparation, storing, or handling of any product shall be strictly in accord with cleanly and sanitary methods.

"(b) Rooms and compartments in which inspections are made and those in which animals are slaughtered or any product is processed or prepared shall be kept sufficiently free of steam and vapors to enable division employees to make inspections and to insure cleanly operations. The walls, ceilings, and overhead structures of rooms and compartments in which product is prepared, handled, or stored shall be kept reasonably free from moisture.

"(c) Butchers and others who dress or handle diseased carcasses or parts shall, before handling or dressing other carcasses or parts, cleanse their hands with liquid soap and hot water, and rinse them in clean water. Implements used in dressing diseased carcasses shall be thoroughly cleansed in boiling water, or in a prescribed disinfectant followed by rinsing in clean water. The employees of the establishment who handle any product shall keep their hands clean, and in all cases after visiting the toilet rooms or urinals shall wash their hands before handling any product or implements used in the preparation of product.

"(d) Aprons, frocks, and other outer clothing worn by persons who handle any product shall be of material that is readily cleansed and only clean garments shall be worn."

forms which employees had elected to purchase from the employer, no issue of fact remains for trial under the second count.

Consequently, affirmance of the summary judgment would be ordered without further discussion, except for the fact that doubts have arisen as to the District Court's jurisdiction. We are not at liberty to ignore a question of jurisdiction, even though it has not been raised by the parties. In so far as the alleged duty of the employer to supply uniforms was grounded on a federal regulation, since the claim was not merely colorable, the federal court had jurisdiction regardless of the citizenship of the parties, as to which the amended complaint contains no allegations. In so far as the alleged duty was grounded on agreement, jurisdiction is not equally clear. A federal court may not assume jurisdiction of a separate and distinct non-federal cause of action because it is joined in the same complaint with a federal cause of action. As stated in the much discussed case of Hurn v. Oursler, 289 U.S. 238, at 246, 53 S.Ct. 586, at 589, 77 L.Ed. 1148, "* * * The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground*; in the latter it may not do so upon the nonfederal *cause of action.*" The distinction is often difficult to apply but in our opinion the case at bar falls within the first category. The damages sought to be recovered and the acts constituting a violation of the alleged duty are the same whether the ground of recovery be regulation or agreement; only the legal source of the alleged duty differs, in one case the claim being that it is imposed by the federal law and in the other by the common law of contracts. We think that the count alleged two grounds for a single cause of action rather than two separate and distinct causes of action, at least as plainly as in Strachman v. Palmer, 1 Cir., 177 F.2d 427, 12 A.L.R.2d 687, where one ground was a federal statute (held not applicable) and the other the common law.[b] Judgment affirmed.

.5. See also Manosky v. Bethlehem-Hingham Shipyard, 1 Cir., 177 F.2d 529, 534; 2 Moore's Fed.Prac., 2d ed., Par. 2.06 (5); 32 Mich.L.Rev. 412. Compare Crabb v. Welden Bros., 8 Cir., 164 F.2d 797, 802; Foster D. Snell, Inc. v. Potters, 2 Cir., 88 F.2d 611, 612.