**KLEINMAN v. BETTY DAIN CREATIONS, Inc.**

No. 228, Docket 21965.

United States Court of Appeals Second Circuit.

Argued April 2, 1951.

Decided May 17, 1951.

Clark, Circuit Judge, dissented in part.

Martin J. Walzer, New York City, for appellant.

Irving Seidman, New York City, for appellee.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The complaint herein sets forth two causes of action, one for infringement of Patent No. 2,422,834 issued to the plaintiff on an application filed in January 1947, and one for breach of a contract to pay the plaintiff for use of the patented article. Judge Rifkind dismissed the complaint, finding the patent not infringed and invalid for want of invention and finding no jurisdiction over the second cause of action, there being no diversity of citizenship between the parties.

The appeal from the decision holding the patent void for lack of invention and not infringed need not delay us long. The patent suit covered a removable shoulder pad for use with women's dresses. The pad was bifurcated so that it could be put on by passing the shoulder strap of a slip or brassiere between its jaws which were then snapped together around the strap holding it in place on the shoulder without the necessity of attaching it to the dress. The lower part of the pad also served to cushion the skin against any chafing by the shoulder strap and the upper part preserved the dress line by concealing the depression that the weight of the strap made in the lower or cushioning element of the pad. The infringing article was not bifurcated and therefore would not preserve the dress line but had two tabs on its upper surface which were fitted with snaps so that the pad could be slipped under a shoulder strap and held in position by passing the tabs over the strap and snapping them to the pad.

We need not go extensively into the prior art. Plaintiff conceded that shoulder pads removably attached to the shoulder straps of undergarments were well known in the trade and admitted that his claim to patentability rested on the cushioning effect of his pad which he claimed was unknown to the prior art in which all pads were placed on top of the undergarment shoulder strap rather than partly beneath. Even were this the case, the reversal of position of strap and pad would hardly render the device patentable but in any event the patented device seems substantially anticipated by Kerrigan No. 2,440,548 (filed April 1946), and Stehlik No. 2,416,415 (filed September 1945). Stehlik had a thin casing between shoulder strap and skin, the greater part of the pad being above the strap. Kerrigan's pad was positioned between shoulder strap and skin. True, the plaintiff claimed a date of conception in 1941 and swore to an invention earlier than that of Kerrigan and Stehlik. See Rule 75, Rules U. S. Patent Office, 35 U.S.C.A.Appendix. But the undisputed evidence indicated that the plaintiff's 1941 invention was very different from the one in suit. It was not bifurcated and admittedly not commercially practicable. Having failed to show just when his invention was conceived, plaintiff must rest upon his application date. The brief outline above is sufficient to indicate that his asserted advance over the then existing art was obviously so far below the present exacting standard of patentability that the patent in suit was properly found invalid for want of invention as well as not infringed. Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127; Crest Specialty Co. v. Trager, 71 S.Ct. 733; Merit Manufacturing Co. v. Hero Mfg. Co., 2 Cir., 185 F.2d 350; Paramount Industries, Inc., v. Solar Products Corp., 2 Cir., 186 F.2d 999; Youngs Rubber Co. v. Allied Latex Co., 2 Cir., 188 F. 2d 945; Killian & Co. v. Allied Latex Co., 2 Cir., 188 F.2d 940; Lenox v. Landers, 2 Cir., 188 F.2d 744.

The plaintiff also asserts that the District Court had jurisdiction to try the

second cause of action for breach of contract. There being no diversity of citizenship between the parties, it is clear that a federal court would lack jurisdiction to pass on that cause of action standing alone. It is equally clear that it had jurisdiction to decide the first cause of action for infringement of a patent. The extent to which admitted jurisdiction over the first cause of action involves dependent jurisdiction over the second is the final question before us.

■ We have had frequent occasion to interpret and apply the case of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 1148, wherein the Supreme Court set forth the tests for determining the situations in which dependent jurisdiction exists. It was there held that dependent jurisdiction existed to decide a single cause of action upon a non-federal ground recovery on the federal ground having failed, but that jurisdiction did not exist to adjudicate a non-federal claim merely because it was joined with a federal one unless there was substantial identity in the facts to be proved to support each of the two. Although efforts on the part of this court to apply this rule[1] have at times been criticised,[2] the Supreme Court has never seen fit to review them, and the other circuits which have passed on the question appear to have been in accord with our views.[3]

■ It is true that the failure to invoke dependent jurisdiction may often be uneconomical because a further trial in a state court may become necessary, nevertheless considerations of judicial economy cannot extend the jurisdiction of the federal courts at the expense of those of the states.[4]

The complaint before us sounds primarily in contract. It alleges that defendant's president, "after examining * * * said model [of the shoulder pad] agreed * * that should the use of the device be practicable * * * after it had been duly

1. E. g., Foster D. Snell, Inc., v. Potters, 88 F.2d 611; Lewis v. Vendome Bags, Inc., 2 Cir., 108 F.2d 16, certiorari denied 309 U.S. 660, 60 S.Ct. 514, 84 L. Ed. 1008; Treasure Imports, Inc. v. Henry Amdur & Sons, Inc., 2 Cir., 127 F.2d 3; Musher Foundation, Inc. v. Alba Trading Co., 2 Cir., 127 F.2d 9, certiorari denied 317 U.S. 641, 63 S.Ct. 33, 87 L.Ed. 517; Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, certiorari denied 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572; Kaplan v. Helenhart Novelty Co., 2 Cir., 182 F.2d 311; Cutting Room Appliances Corp. v. Empire Cutting Machine Co., 2 Cir., 186 F.2d 997; Markert v. Swift & Co., 2 Cir., 187 F.2d 104.

2. See dissenting opinions of Judge Clark in Lewis v. Vendome Bags, supra; Treasure Imports, Inc. v. Henry Amdur & Sons, Inc., supra; Musher Foundation, Inc., v. Alba Trading Co., supra; Zalkind v. Scheinman, supra; Note, 52 Yale L.J. 922; 3 Moore, Federal Practice (2d Ed.). 1817.

3. Loew's Drive-In Theatres, Inc. v. Park-In Theatres, Inc., 1 Cir., 174 F.2d 547, certiorari denied 338 U.S. 822, 70 S.Ct. 68. (However, although affirming a judgment which rejected dependent jurisdiction the First Circuit seems to have at times treated the question of that jurisdiction as involving only the exercise of discretion on the part of the trial court and as founded on a doctrine resembling that of forum conveniens, Massachusetts Universalist Convention v. Hildreth & Rogers Co., 1 Cir., 183 F. 2d 497. Such an interpretation of the rule in Hurn v. Oursler, supra, would seem to leave the solution even more difficult than it has often proved to be and has not we believe been adopted in any other circuit); Jordine v. Walling, 3 Cir., 185 F.2d 662, (en banc); Pearce v. Penna. R. Co., 3 Cir., 162 F.2d 524, certiorari denied 332 U.S. 765, 68 S.Ct. 71, 92 L.Ed. 350; New Orleans Public Belt. R. Co. v. Wallace, 5 Cir., 173 F.2d 145; Newport Industries, Inc., v. Crosby Naval Stores, Inc., 5 Cir., 139 F.2d 611; French Renovating Co. v. Ray Renovating Co., 6 Cir., 170 F.2d 945; General Motors Corp. v. Rubsam Corp., 6 Cir., 65 F.2d 217, certiorari denied 290 U.S. 688, 54 S.Ct. 123, 78 L.Ed. 593; Crabb v. Welden Bros., 8 Cir., 164 F. 2d 797; Dubil v. Rayford Camp & Co., 9 Cir., 184 F.2d 899; Strachman v. Palmer, 1 Cir., 177 F.2d 427, 12 A. L.R.2d 695, 701; cf. United Lens Corp. v. Doray Lamp Co., 7 Cir., 93 F.2d 969.

4. See e. g., Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U.S. 254, 259, 35 S.Ct. 788, 59 L.Ed. 1295; Zalkind v. Scheinman, supra, n. 1, 139 F.2d at page 902; Schulman and Jaegerman, Some Jurisdictional Limitations on Federal Procedure, 45 Yale L.J. 393, 398; Note, 64 Harv.L.Rev., 968, 976.

tried, * * * the plaintiff would be * * * compensated" and that although the defendant made and sold many of the pads it had not paid royalties for them. Then followed an allegation that the disclosure of the device was made in confidence. The relief sought was damages for breach of the agreement.

■ Thus the complaint by the facts alleged and the relief sought sets forth the essentials of a license agreement and the failure to make payments thereunder.[5] It is not a case where a defendant has wrongfully appropriated to himself the fruits of plaintiff's labors and passed them off as his own, for it is alleged that it was agreed that plaintiff should have a right to receive compensation for the use of his device and that the defendant should have the right to use it. General Motors Corp. v. Rubsam Corp., supra, n. 3. A failure to make payments under a licensing agreement does not constitute the tort of unfair competition and is actionable only in contract.

There being no allegation or proof of unfair competition we need not discuss the extent, if any, by which the recent revision of the Judicial Code, 28 U.S.C.A. § 1338(b) has broadened the rule of Hurn v. Oursler, supra,[6] in cases where actions for unfair competition and infringement are joined, or what would be the result if the plaintiff had alleged a good claim for unfair competition and only proved a claim in contract.[7]

■ To recover on his second claim, the plaintiff must prove (1) the existence of the contract, (2) that the goods were of use to the defendant, (3) that the defendant sold the goods, (4) that it failed to pay for them, and (5) the fair compensation due. The proof in the action for infringement of the patent would cover point 3 above and possibly point 2 by implication. It would certainly not involve points 1 (the existence and terms of the alleged oral contract) 4 or 5 (for damages for infringement would include the infringer's entire profit from its infringement, whereas the license agreement set forth in the contract would clearly contemplate a sharing of the profits arising from the sale of the licensed article.[8] Furthermore, such a contract could exist independently of the validity or invalidity of a patent on the licensed device. The decisions are unanimous that jurisdiction does not exist in such circumstances and those cited in the footnote [9] are particularly apposit, where claims almost identical with the second claim of the plaintiff were under consideration and were rejected.

In view of the foregoing authorities and what we believe is satisfactory reasoning the judgment of the court below is affirmed.

CLARK, Circuit Judge (dissenting in part).

I agree that the patent is invalid for want of invention, but think it regrettable that, having come this far in rejecting plaintiff's claim of monopoly in these shoulder pads, we nevertheless leave a remnant of claim open to possible brief revival in a state court. Unless quite necessary, we ought not thus to impose upon the parties, their attorneys, the trade, and the courts, state as well as federal. And I am convinced that we are under no such compulsion, for the new remedial statute, 28 U.S.

5. Of course the mere fact that a plaintiff has made a formal error in his pleadings by setting forth two grounds of recovery on a single cause of action as two separate causes of action would not alone prevent the existence of dependent jurisdiction. Warner Publications, Inc., v. Popular Publications, 2 Cir., 87 F.2d 913, 914.

6. Cf. Kaplan v. Helenhart Novelty Co., supra, n. 1; Cutting Room Appliances Corp. v. Empire Cutting Machine Co., id.; Markert v. Swift & Co., id.

7. Cf. Lewis v. Vendome Bags, Inc., supra, n. 1.

8. See French Renovating Co. v. Ray Renovating Co., supra, n. 3, 170 F.2d at page 947; United Lens Corp. v. Doray Lamp Co., id., 93 F.2d at page 971.

9. Foster D. Snell, Inc. v. Potters, supra, n. 1; Loew's Drive-In Theatres, Inc. v. Park-In Theatres, Inc., supra, n. 3; French Renovating Co. v. Ray Renovating Co., id.; General Motors Corp. v. Rubsam Corp., id.

C.A. § 1338(b), gives us complete power to finish the business we have started.

Because I am so certain of this, and also because of the moderation and balance of Judge Hand's discussion of past disputes over "pendent jurisdiction," I will omit any extensive exploration of this background. But I do believe it noteworthy that the cases cited from outside this circuit do not really provide the support inferred. Thus none of the cases collected in the third footnote of the opinion

even cite our decisions, notwithstanding the number and argumentative fullness of the latter.[1] This pointed omission, when viewed against the background of unanimity of scholarly criticism[2] and the substantial body of authority upholding pendent jurisdiction,[3] seems to me of telling significance. The truth of the matter is that our local rule did not win assent even before Congress stepped in.[4] So, too, the cases cited from other fields, such as admiralty and employers' liability,[5] do not materially assist

1. The cited cases, too, appear all to have been before the remedial statute which they do not cite; and they are from variegated fields of law, see note 3 infra. Those pertinent here, and cited again in the 9th footnote of the opinion, are discussed in note 9 infra.

2. The opinion cites 52 Yale L.J. 922 and 3 Moore, Federal Practice 1817 (2d Ed.)—the latter an extensive criticism more fully cited hereinafter is particularly important as background for the new statute, as pointed out in notes 3 and 6 infra. But other authorities could have been added, e.g., 60 Harv.L.Rev. 424, 430, 431; 61 id. 362; 4 U. of Chi. L.Rev. 679; 36 Va.L.Rev. 545; 2 Callmann, The Law of Unfair Competition and Trade-Marks 1564–1568, 1572 (1945); and see also note 6 infra.

3. Including cases such as Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L. Ed. 195; United Lens Corp. v. Doray Lamp Co., 7 Cir., 93 F.2d 969, cited in the opinion supra; E. Edelmann & Co. v. Triple-A Specialty Co., 7 Cir., 88 F.2d 852, certiorari denied 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884; Southern Pac. Co. v. Van Hoosear, 9 Cir., 72 F.2d 903, and the extensive lines of authority cited in 3 Moore, Federal Practice 372, n. 73, 374, n. 81 (2d Ed.). I agree with the criticism, in the 3d footnote of the opinion, of the development in the First Circuit bringing the rule of *forum non conveniens* into the midst of this problem; but it should be noted that that rule, whatever its own confusions, is a rejection of our approach, as is shown rather clearly in Strachman v. Palmer, 1 Cir., 177 F.2d 427, 12 A.L.R.2d 687, reversing D.C.Mass., 82 F.Supp. 161 (which had gone the other way); Manosky v. Bethlehem-Hingham Shipyard, 1 Cir., 177 F.2d 529, 534, and the cited case Massachusetts Universalist Convention v. Hildreth & Rogers Co., 1 Cir.,

183 F.2d 497. While the foundation case of Hurn v. Oursler, 289 U.S. 238, 53 S. Ct. 586, 77 L.Ed. 1148, did have confusing features, it is often overlooked that its modification of the judgment below, 2 Cir., 61 F.2d 1031, was a reversal of the lower court's repudiation of pendent jurisdiction; as Professor Moore has trenchantly pointed out, "It is clear that the Court in the Hurn case definitely intended to repudiate the Second Circuit rule." 2 Moore, Federal Practice 371 (2d Ed.), which repeats his earlier criticisms, as in 1947 Cum.Supp. to 1 Moore, Federal Practice § 2.04 (1st Ed.). See also the remarks of Mack, J., in the Van Hoosear case, pointing out that as trial judge in the Hurn case he had felt himself bound by earlier Second Circuit cases "contrary to some cases in which the writer had participated in other circuits." 72 F.2d at page 911.

4. Considerable research has failed to uncover any case of express acceptance of our views beyond our own circuit unless it be the partial or implicit approval in the district court decision which was reversed in Strachman v. Palmer, supra note 3. It is true that the Supreme Court has denied certiorari in various of our cases; but the Court's own insistence that no inferences should be drawn from such denials generally would seem to have peculiar point here. For these were petitions by *plaintiffs* where the main issue has properly gone against them; review of the small side issue to give the petitioners less than they have is an ambiguous course, hardly to be expected, and the denial hence without significance.

5. Thus Jordine v. Walling, 3 Cir., 185 F. 2d 662, makes a curious separation—overruling Lindquist v. Dilkes, 3 Cir., 127 F.2d 21, 25—of seamen's claims under the Jones Act, 46 U.S.C.A. § 688, and for maintenance and cure, one which if it is sustained would seem to call for

here. However much we may regret the failure of the Code revisers to make a frontal attack upon the broad problem in all its wasteful aspects, we can hardly deny force to what they did attempt and Congress accepted.

Judge Hand makes a further illuminating concession on one point usually left unmentioned: he points out—too mildly, perhaps—that the consequences of the restrictive interpretation "may often be uneconomical," but the exigencies of federal jurisdiction seem to require it. Thus he concedes the often-overlooked obvious: the limiting rule cannot possibly be justified by practical considerations, but must and does rest solely on the fiat of the law—and a questioned fiat at that. Yet once the legislature removes this ban-by-fiat there is no longer any reason to oppose the dictates of common sense—the basic ground for the opposite approach. I stress this because it does seem to me that the opinion accords only cursory mention to this remedial development without discussion of the

compelling reasons which led to its enactment. As I hope to show, I believe the statute covers the case thoroughly. But even if I am wrong in that belief, I still think that applying the demonstrable spirit of this statute should not be difficult for a court which has read equity into statutes where no legislative intent therefor is discoverable. Compare Nordquist v. United States Trust Co., 2 Cir., 188 F.2d 776; Cabell v. Markham, 2 Cir., 148 F.2d 737, affirmed Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165.

The new statute adds to the ancient federal jurisdiction in patent, copyright, and trademark cases, 28 U.S.C.A. § 1338(a), the following provision, § 1338(b): "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws." Its history, briefly summarized in the footnote,[6] shows how completely it was de-

prompt statutory correction. Pearce v. Pennsylvania R. Co., 3 Cir., 162 F.2d 524, certiorari denied 332 U.S. 765, 68 S.Ct. 71, 92 L.Ed. 350, followed in New Orleans Public Belt R. Co. v. Wallace, 5 Cir., 173 F.2d 145, finding two separate "causes" in a claim for personal injury by a railroad employee against the railroad and an individual is surely not beyond question. See Markert v. Swift & Co., 2 Cir., 187 F.2d 104; Strachman v. Palmer, supra note 3.

6. The suggestion for the statute came from Professor Moore in a letter of March 7, 1945, to Chief Code Reviser W. W. Barron and was that there be added to the grant of federal jurisdiction in cases under the patent, copyright, and trademark laws the following: "and of all claims for unfair competition related thereto." He supported this as constitutionally justified and "needed to promote a uniform federal law on unfair competition; and to avoid the piecemeal litigation that is now compelled by some decisions, notably those in the Second Circuit," citing particularly the dissent in Musher Foundation v. Alba Trading Co., 2 Cir., 127 F.2d 9. as stating "the practical need for a different approach." The Reviser first tried out the idea in terms of joinder "as a single cause of action," Revision of Jud.

Code, Prelim. Draft, Oct. 30, 1945, § 1360; but upon objection this was rejected as too limited, and the present form substituted. That preliminary draft did carry as a "Reviser's Note" the material which, without change of substance, now appears as the "Reviser's Note" to the present § 1338(b) and which was erroneously relied on in this case below, D.C.S.D.N.Y., 88 F.Supp. 637, 639, as stating that the statute was "no more than a restatement" of the former rule. While the note would doubtless have been more clearly expressed had it been written for the final form of the statute, yet it shows in several ways, including its reference to the Musher Foundation dissent, that it was written in the light of Professor Moore's criticism, loc. cit. supra note 3, of our refusal to accept the repudiation of the "Second Circuit rule" in Hurn v. Oursler, supra. During the passage of the provision through Congress, it was accepted by text writers as broadening the former rule of at least this circuit, Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob. 216, 232; The Proposed Revision of the Federal Judicial Code, 60 Harv.L.Rev. 424, 430, 431, as well as by our annual Circuit Conference which asked that its opposition to the new provision, as changing and unset-

signed to change the rule followed in this circuit. And we have held that it did: Cutting Room Appliances Corp. v. Empire Cutting Machine Co., 2 Cir., 186 F.2d 997, overruling Derman v. Stor-Aid, Inc., 2 Cir., 141 F.2d 580. See also Kaplan v. Helenhart Novelty Corp., 2 Cir., 182 F.2d 311, and Paramount Industries v. Solar Products Corp., 2 Cir., 186 F.2d 999, also giving effect to the provision. I think the close analogy between the case before us and these other decisions of our court can be shown schematically by enumerating the substantial and overlapping elements in each cause. But before I do so, I want to clear up two matters of confusion. The first is the nature of plaintiff's second cause of action and its inadequate description as a mere contract claim; the second, the reasonable meaning of the statutory phrase "claim of unfair competition."

On the first, the plaintiff's complaint has the vagueness so usual in this type of case which seems to aid the conclusion that this claim is without the federal jurisdiction. Curiously enough, this unearned increment for plaintiff is one he still rejects, since he, like other plaintiffs similarly situated, apparently never realizes that his only hope is to save a remnant of claim for later litigation in the states. But surely a case should not fail of disposition on the merits because it is poorly pleaded or because it is weak; moreover, this consequence is at variance with settled federal law. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 71 S.Ct. 692; Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. The new statute does not require the related claim to be "substantial." That requirement applies only to the main claim, and is obviously designed to prevent a collusive backdoor approach to the federal court. But here the main claim is quite substantial, being on a duly granted patent. Hence the court should accept and quickly end even a weak case within its now-defined jurisdiction. We must therefore take the case as plaintiff conceived it, not as we fancy it; and if we are in doubt as to his thoughts, we may properly look to his own testimony to see what he had in mind. In this case the record leaves no doubt as to what he thought his case was; there is doubt only as to legal theory, and specifically as to whether the label "contract" or "misappropriation of confidential disclosures" or both should apply and be somehow conclusive.

So the plaintiff, in stating his second cause, first incorporates all the nine paragraphs of his first cause and then alleges that this cause "arises out of the same facts and acts as the first cause of action, namely the manufacture and sale of shoulder pads of plaintiff's invention, by defendant." In successive paragraphs he then describes his labor as a mechanic and inventor for over two years to devise a shoulder pad, his disclosure of a model of it in confidence to defendant's president, and the latter's agreement that "should the use of the device be practicable and of use to the defendant after it had been duly tried, that the plaintiff would be duly and adequately compensated for the use of said device." Next he asserts that defendant has "made and sold a large number of the said device" without compensating him therefor. Then follow allegations of representations as to the confidential nature of the disclosures and plaintiff's reliance thereon; since these are important on the issue before us, they are reproduced in the footnote.[7] The twenty-one paragraphs come to a close with a further allegation that the defendant has

---

tling the law, be recorded for the proper congressional committee. See also Stauffer v. Exley, 9 Cir., 184 F.2d 962, 965; Schreyer v. Casco Products Corp., D.C.Conn., 89 F.Supp. 177, approved in 36 Va.L.Rev. 545; Moore's Commentary on the U. S. Judicial Code 150 (1950).

7. "18. That the plaintiff at the time of making the disclosure of his creations and devices to the defendant was led to believe that the disclosures were made in strict confidence and that his secrecy in connection with his creations, devices and/or inventions would not be violated.

"19. That the plaintiff herein relied upon the above representation and upon the representations of payment for the use of said creations, devices, and/or inventions made by the said defendant and disclosed his creations, devices and/or inventions to the said defendant in full reliance upon the said representations."

made and sold the said device from the plaintiff's model in great numbers and the claim that the plaintiff "has been damaged in the sum of $25,000." The plaintiff's own proof was in accord. So he testified that while his patent application was pending he made up a shoulder pad embodying his invention which he showed the defendant's president in confidence, telling him, "I have a new invention." And the defendant's president agreed to treat him "right" and give him "a nice royalty on that." The defendant's president corroborated much of this, even to the point of agreeing to "the keeping of his invention, so-called invention, in confidence," but stressed the need of invention. "You must first produce the patent, and then you must prove to me that no one else is going to handle it" and under those circumstances "it would pay me to give you royalty for it." Later he reiterated this to show that he expected both a patent on the pending application and a monopoly of it and then he would be willing to pay a royalty.

As to a "claim for unfair competition" I think the wide range of authorities now makes it quite improper (even upon a strict construction if that be thought at all justified) to restrict this concept to claims of, perhaps, palming off or misrepresenting a competitor's product. This is a developing field, statute-wise as well as by the common law. Thus, Chief Justice Hughes in A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 531, 532, 55 S.Ct. 837, 844, 79 L.Ed. 1570, after pointing out that strictly speaking the phrase at common law related "to the palming off of one's goods as those of a rival trader," went on to say: "In recent years, its scope has been extended. It has been held to apply to misappropriation as well as misrepresentation, to the selling of another's goods as one's own—to misappropriation of what equitably belongs to a competitor. International News Service v. Associated Press, 248 U.S. 215, 241, 242, 39 S.Ct. 68, 63 L.Ed. 211. Unfairness in competition has been predicated of acts which lie outside the ordinary course of business and are tainted by fraud or coercion or conduct otherwise prohibited by law. Id., 248 U.S. 215, page 258, 39 S.Ct.

68, 63 L.Ed. 211." Here he dropped a footnote referring to the "cases collected in Nims on Unfair Competition and Trade-Marks," of which the latest edition shows even more clearly why this is an "unruly concept," constantly expanding and now including (among other extensive analogies to our present case) a breach of a contract against a disclosure of a secret process. See 4th Ed. 1947, 30–35, 36, 40, 52–66, 407–411, and elsewhere *passim*. So the Court has noted the thirty-one or more diverse types of business practices now subject to the control of the Federal Trade Commission as "unfair competition," F. T. C. v. Bunte Bros., 312 U.S. 349, 354, 61 S.Ct. 580, 85 L.Ed. 881; and that lawyers' standby, the Federal Digest, under the rubric "Trade-Marks and Trade-Names and Unfair Competition," has several score key numbers listing the many forms of unfair competition. The "palming-off doctrine" is only one sardine among all the fish in the ocean. All this evidence really seems to me so extensive and complete that I hesitate to embroider the matter, although it may well be the nub of the case. How could it be otherwise in a society which lives by competition, 6 Corbin on Contracts § 1379 (1951), than that any business rivalry in selling is competition and any legally forbidden course, unfair selling? And what could be more unfair or illegal than misappropriation of a confidential disclosure of an invention—all the more when backed up by a specific agreement to act in a fair and businesslike way by paying a reasonable compensation?

Let us now analyze the elements of each cause of action to see how intertwined they are. The plaintiff in an ordinary patent infringement action—the first cause here—undertakes to show (1) that he had a novel idea for a commercial device, which (2) was appropriated by the defendant, (3) wrongfully because in violation of a patent grant. As we shall see, (1) and (2) are regularly repeated in these related causes and (1) is the fundamental claim. It is (3) which does and must vary. In the Paramount Industries case, supra, we affirmed jurisdiction, as meeting the "relation" test of the statute, of a traditional claim based

554

on "palming off," deception of customers, and misappropriation of trade-name, though significantly we held against plaintiff on the merits for lack of these very elements. And in the Kaplan and Cutting Room Appliances cases, both supra, we went perhaps even further. In the first of these two cases, we supported pendent jurisdiction in a suit to declare a patent invalid of a related claim that the defendant had wrongfully asserted to the trade his own right to the device; while in the second, an ordinary suit upon a patent, we reversed a denial of jurisdiction over the defendant's counterclaim alleging similarly wrongful assertions by the plaintiff. Coming directly to our present issue, we have often upheld causes where (3) is supplied by allegations that defendant appropriated the idea in violation of a confidential disclosure. See, e.g., DeFilippis v. Chrysler Corp., D.C.S. D.N.Y., 53 F.Supp. 977, affirmed 2 Cir., 159 F.2d 478, certiorari denied 331 U.S. 848, 67 S.Ct. 1733, 91 L.Ed. 1857; Pennington Engineering Co. v. Houde Engineering Corp., 2 Cir., 136 F.2d 210, 216, certiorari denied 320 U.S. 771, 64 S.Ct. 84, 88 L.Ed. 461; Conmar Products Corp. v. Universal Slide Fastener Co., 2 Cir., 172 F.2d 150, 155. True, the matter of pendent federal jurisdiction appears not to have been separately discussed and possibly not thought of. But I apprehend that under our cases such

jurisdiction naturally follows, particularly since this line of authority is now so settled as a form of unfair competition, as in Nims, loc. cit. supra; cf. also Protection and Use of Trade Secrets, 64 Harv.L.Rev. 976.

What else have we here? As we have seen, there are clear allegations (and testimony) of breach of confidence. The plaintiff must fail for a different reason—the lack of a patentable idea. This basic issue has already been so thoroughly canvassed that state courts will hardly wish to re-examine it, no matter how much we now push it over to them. What does the allegation of defendant's supporting promise do other than strengthen the claim of breach of confidence? It may be rejected as surplusage or taken as evidential, and the result is the same.[8] I submit that this additional bolstering of his claim by plaintiff is too small a basis upon which to reject the beneficial effects of a new remedial statute. We are not called upon and should not announce a rule covering every species of contract to pay a patent royalty;[9] we are dealing—as we must—with a single concrete case, turning in fact upon the basic problem of invention which in any event we must settle. Having settled it, common sense demands that we give realistic effect to our decision by applying it also to this little side issue.[10]

8. The opinion suggests a difference in the rule of damages between the patent claim and the claim under discussion, since under the first the plaintiff would take all the profits, while under a license agreement it would share only the profits. There seem several answers: The claims for unfair competition held related do not call for identical damages, i. e., the statute in its very terms must accept the expected difference; a division according to the percentages of a licensing agreement is simple and merely mathematical; except for this possibility the damages here appear actually the same; this possibility was probably not contemplated and was definitely excluded in the testimony of the defendant's president that he was to have a monopoly.

9. Thus, the royalty cases cited as particularly apposite in the 9th footnote of the opinion need to be re-evaluated in terms of their concrete facts; they are

not now helpful, since they occurred before the statute. It would seem probable that some should now be followed, and others not. For example, an acknowledgment of a patent's validity in a license agreement might perhaps remove all question on that point from the case, leaving only serious questions of merely contract law. Even under the statute it may still occur that the claims are actually unrelated. Cf. Dubil v. Rayford Camp & Co., 9 Cir., 184 F.2d 899.

10. The attempt to untwine these intertwined cases may lead to curious results, as Judge Kennedy has acutely pointed out in Steinhardt Novelty Co. v. Arkay Infants Wear, D.C.E.D.N.Y., 10 F.R.D. 283, 285, n. 3. Suppose here the defendant had counterclaimed for a declaratory judgment, or for unfair competition in its favor: would not the plaintiff have had to plead his asserted contract or else lose it?

It is obvious that this decision will leave the law once again in an unsettled state in this circuit. Our earlier decisions have given substantial effect to the new statute, as surely we must. Now it would appear that, by some of us at least, the statute is to be narrowly construed and ambiguities in allegation resolved against its operation. That seems to me to defeat a large part of its purpose. I add that on the view I take I need not consider the question (which I should think was before my brothers) whether claims for unfair competition are not within federal jurisdiction of their own right, as urged by counsel, though not decided, in *Cutting Room Appliances Corp. v. Empire Cutting Machine Co.*, supra. See 15 U.S.C.A. § 1126(h) and (i); *Stauffer v. Exley*, 9 Cir., 184 F.2d 962; 64 Harv. L.Rev. 1209; also Bunn, The National Law of Unfair Competition, 62 Harv.L. Rev. 987. I would modify to dismiss all claims on the merits.